IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGEL VICENTE ALEN-GUTIERREZ, et al. | * * * |
| Plaintiffs | * * |
| v. | Civil No. 97-2921(SEC) * * |
| LUIS ACEVEDO MIRANDA, et al. | * * |
| Defendants | * |

**OPINION AND ORDER**

Pending before the Court are two motions to dismiss filed by co-defendants Luis Acevedo-Miranda **(Docket #12),** and Supermercados Amigo, Inc. and Luis A. Merced Marrero **(Docket #15),** which were duly opposed by plaintiffs. In their motions to dismiss, defendants argue that the above-captioned action should be dismissed because plaintiffs have failed to state a claim under 42 U.S.C. § 1983; they have failed to state a claim under 42 U.S.C. §1985[1]; plaintiffs lack standing to sue on behalf of the minors under Section 1983; and the Court lacks supplemental jurisdiction over the pendent law claims once all federal claims have been dismissed. Defendant Supermercados Amigo also argues that all claims against it should be dismissed because it is a private entity that cannot be held liable under Section 1983. Furthermore, defendant police officer Luis Acevedo Miranda argues that the complaint against him should be dismissed because plaintiffs do not allege that he is being sued in his personal capacity, and a suit against him in his official capacity would be barred by the Eleventh Amendment.



---

[1]In their consolidated oppositions to the motions to dismiss, plaintiffs concede that they have failed to state a cause of action under Section 1985. They therefore agreed to the dismissal of their claims under 42 U.S.C. § 1985. In light of that, plaintiffs' claims under 42 U.S.C. § 1985 shall be **DISMISSED**.

**Civil No. 97-2921(SEC)**                                                                                                    2

For the reasons stated below in this Opinion and Order, defendants' motions to dismiss **(Dockets #12, 15)** shall be **GRANTED IN PART** and **DENIED IN PART**.

**Applicable Law – Motion to Dismiss Standard**

In Iacampo v. Hasbro, Inc., 929 F. Supp. 562 (D.R.I. 1996), a federal district court cogently held that, "[l]ike a battlefield surgeon sorting the hopeful from the hopeless, a motion to dismiss invokes a form of legal triage, a paring of viable claims from those doomed by law." Id. at 567. See also Guckenberger v. Boston University, 957 F. Supp. 306, 313 (D. Mass. 1997).

In fact, Rule 12(b)(6) motions such as this one have no purpose other than to "test the formal sufficiency of the statement of the claim for relief... [They are not, however,] a procedure for resolving a contest about the facts or the merits of the case."5A Wright & Miller, Federal Practice & Procedure, supra §1356, at 294 (2d ed. 1990). Only where the complaint fails to comply with the liberal standard provided in Rule 8(a), that is, to provide a "short and plain statement ... showing that the pleader is entitled to relief," will it be subject to dismissal under 12(b)(6). Fed. R. Civ. P. 8(a). *See also* Federal Practice and Procedure, supra at 296; Podell v. Citicorp Diners Club, Inc., 859 F. Supp. 701 (S.D.N.Y. 1994). It is the moving party which has the burden of proving that no claim exists. Federal Practice and Procedure, supra at 115 (1996 Supp.). See also Clapp v. LeBoeuf, Lamb, Leiby & MacRae, 862 F. Supp. 1050 (S.D.N.Y. 1994).

In determining whether to grant a motion to dismiss, courts must construe the complaint "in the light most favorable to plaintiff" and treat her allegations as though they were true. Federal Practice and Procedure, supra at 304. See also Rockwell v. Cape Cod Hosp., 26 F.3d 254 (1st Cir. 1994). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

**Civil No. 97-2921(SEC)**                                                                 3

relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994); Schroeder v. De Bertolo, 879 F. Supp. 173, 175 (D. Puerto Rico, 1995).

Courts are not, however, required to "accept every allegation made by the complainant no matter how conclusory or generalized." U.S. v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992). As the First Circuit has held, "[t]he pleading requirement, however, is 'not entirely a toothless tiger.'" Doyle v. Hasbro, 103 F.3d 186, 190 (1st Cir. 1996), quoting The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). This Court need not accept plaintiff's "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

**Factual Background**

Plaintiffs in this case are Angel Vicente Alen-Gutierrez, his wife Lourdes Maria Arias-Jimenez, and their conjugal partnership. They appear on their own behalf, and as parents with *patria potestas* over minor child Veronica Maria Alen-Arias. Also plaintiffs in the above-captioned case are Juan Carlos Arias-Jimenez, his wife, and their conjugal partnership. They appear on their own behalf, and as parents with *patria potesta*s over minor children Carla Beatriz Arias-Gonzalez and Laura Raquel Arias-Gonzalez.

Defendants are police officer Luis Acevedo Miranda; Supermercados Amigo, Inc. ("Amigo"); Luis A. Merced Marrero ("Merced"); Efrain Colon ("Colon"); Juan Miro ("Miro"); and American International Insurance Company.

The facts which gave rise to the instant case occurred on January 4, 1997. On that day, plaintiff Juan Carlos Arias-Jimenez ("Arias") entered Caparra Shopping Center's Amigo

[1] Supermarket to purchase some items with his two children Carla Beatriz Arias-Gonzalez ("Carla")

**Civil No. 97-2921(SEC)**                                                                 4

and Laura Raquel Arias-Gonzalez ("Laura"), as well as co-plaintiff minor Veronica Maria Alens-Arias ("Veronica"). They got some items and Laura paid for them at the cash register with money given to her by her father.

They reached the parking lot of the Caparra Shopping Center, where Amigo is located, and entered the Toyota Tercel vehicle driven by Arias. They were in the process of leaving the parking lot when a security guard, later identified as co-defendant Miro, and Amigo's assistant manager, later identified as co-defendant Colon, instructed Arias to stop the vehicle and step out of it. Miro and Colon were accompanied by a man equipped with a beeper and a cellular telephone, who was later identified as co-defendant Merced. Plaintiffs aver that at that time Merced posed as a client of the store, but he later turned out to be an employee of Amigo, which he denied at the time.

Colon instructed Arias to get out of the car because a "client" (Merced) had stated that he taken a bottle of wine from the supermarket. Merced said that he witnessed Arias introducing a bottle of wine in his pocket. Miro and Colon repeated their request that Arias get out of the vehicle; Arias refused and stated that he would wait for his attorney. Carla and Veronica got out of the car and went to the nearest public telephone to get help.

Arias was handcuffed and taken to a patrol car, while Carla, Laura, and Veronica returned to the public telephone to get assistance. When they returned to the car, there were several persons in the immediate area, including police personnel in uniform and personnel from Amigo. Arias was taken to the Juan Domingo Police Station in a patrol car, while the girls were taken there as well by a policewoman named Officer Jimenez.[2]

---

[2] Officer Jimenez was a named defendant in the complaint filed by plaintiffs. They, however, never served process on her and we find that she is not a proper party to this suit. Because plaintiffs never effected service on this defendant, the Court finds that all claims against her should be **DISMISSED** for failure to serve process under

Officer Jimenez stepped out of the car and two men, one of them a police officer, stayed watching the car. While the girls were inside the car, an Amigo employee pointed to the car and stated, "The bottle is in there." Carla asked to go to the bathroom, while Veronica stayed in the car. Laura also went into the police station.

Carla was followed into the bathroom by a female police officer, who told Carla that she had been instructed to search her. The police officer proceeded to search Carla, and instructed her to empty the contents of her exercise bag in the lavatory. The bottle of wine was not found on Carla's person or in her bag. Carla asked the police officer, "What did you believe, that I was going to throw the bottle into the toilet?" After the fruitless search, the police officer allowed Carla to use the bathroom. When Carla came out of the bathroom, an Amigo employee asked the police officer, "Did you check her well, she has the bottle?", to which the police officer responded, "She has nothing." Before her person and her property were searched, Carla was not given any legal warnings.

After Carla left the bathroom, she returned to the car; Laura also came out of the police station accompanied by a police officer and Merced and Colon. A female police officer requested to see Laura and Veronica's bags and proceeded to search them. Once again, before their belongings were searched, neither Laura nor Veronica received any legal warnings.

Police officers, along with Merced and Colon, asked Arias to open the trunk of the car. The police searched the bags from the supermarket, and checked the sales ticket, which Carla gave them. They did not find anything. Once again, no legal warnings were issued before the search of the trunk of the car. Merced asked the police to check beneath the spare tire; they complied but did not find anything.

Fed.R.Civ.P. 4(m) and for lack of prosecution under Fed.R.Civ.P. 41(b).

The police proceeded to search the entire vehicle, and in the glove compartment found a couple of tuna cans and a bottle of sauce. Plaintiffs aver that these had been brought by Carla and Laura from their home kitchen to prepare a snack after their workout at the gymnasium. When the police found the tuna cans, Merced told them that instead of the wine, they had really taken the tuna cans from the supermarket.

One police officer stated that the girls had to be taken to a "minors" judge, while another stated that it was not necessary, to which the first one responded that he "was instructed to take them". However, they were never taken to see a judge. At this time, Arias was taken back into the police station. Carla and Veronica were interrogated by a police officer who was on the telephone. From the public telephone which was outside of the station, Carla and Veronica called a friend of the family, Mr. Jose Vicente, and their uncle, Dr. Jose Arias. The family friend told the girls that he would go pick them up; when he arrived after a long period of time, he was told that he could not take the girls. Subsequently, the girls' uncle, Dr. Arias, arrived with an attorney.

The attorney entered a room where Arias was detained, and was able to interview him. After some time had passed, Mr. Vicente was told that he could take the girls. Arias was later released; criminal charges were subsequently brought against him, of which he was cleared by the presiding judge.

Plaintiffs aver that they "were subjected to public derision and scorn, at the parking of Amigo, were subjected to interrogatories, and to searches [of] their persons and their possessions, were not given legal warnings, the minors were not attended to by personnel for minor offenders. [Arias] was handcuffed and placed under custody, the three girls were placed under custody, and, therefore, were detained illegally against their will." **(Docket #1, Complaint, ¶ 3.24).**

They aver that police personnel that intervened violated plaintiffs' civil and constitutional rights. Furthermore, they charge that police personnel were "instigated by Amigo personnel to conduct the search and arrest" of plaintiffs. They argue that Amigo is responsible for the actions and omissions of its employees.

**Applicable Law and Analysis – Whether plaintiffs have stated a cause of action under §1983**

In order to establish a cognizable claim under §1983, plaintiffs must not only demonstrate that the defendants, acting under color of law, deprived them of a federally protected right, but must also prove that these defendants were personally involved in such a violation. See, e.g., Gómez v. Toledo, 446 U.S. 635 (1980); Hudson v. Palmer, 468 U.S. 517 (1984); Pinto v. Jiménez Nettleship, 737 F.2d 130 (1st Cir. 1984). See also Rodríguez-Cirilo v. García, 115 F.3d 50 (1st Cir. 1997). Moreover, the First Circuit has recently emphasized that § 1983 imposes a causation requirement similar to that of ordinary tort law. Rodríguez Cirilo, 115 F.3d at 52, referring to Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989). The mere allegation of harm, however, does not amount to satisfying the causation requirement of a § 1983 claim. See Sullivan v. Carrick, 888 F.2d 1, 4 (D.P.R. 1989) (citing Gordon v. Warren Consol. Bd. of Educ., 706 F.2d 778, 780 (1st Cir. 1983).

In Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 113 S. Ct. 1160, 1163 (1993), the United States Supreme Court held that federal courts could not apply a "heightened pleading" requirement, more stringent than the usual pleading requirement of Rule 8(a) of the Federal Rules of Civil Procedure, in civil rights cases alleging municipal liability under §

**Civil No. 97-2921(SEC)**                                                                                                              8

1983.³ Some district courts within the First Circuit have gone as far as to apply this standard to all § 1983 cases. See McGrath v. McDonald, 853 F. Supp. 1, 3 (D. Mass. 1994) ("[o]n a motion to dismiss, civil rights claims are subject only to normal standards of pleading.") Others have stated that even though Leatherman only applies to §1983 claims against municipalities, "the logic of the [Supreme] Court's reaffirmation of the sufficiency of the rule of notice pleading in that context has no less force in cases involving civil rights claims against individual government officials." Gerakaris v. Champagne, 913 F. Supp. 646, 652 (D. Mass. 1996).

The First Circuit addressed the Supreme Court's holding in Leatherman in the context of a Section 1983 claim alleging racial discrimination in a recent case called Judge v. City of Lowell, 160 F.3d 67 (1ˢᵗ Cir. 1998). In Lowell, the First Circuit affirmed the dismissal of an equal protection claim of racial discrimination under Section 1983, holding that "the element of illegal motive must be pleaded by alleging specific non-conclusory facts from which such a motive may reasonably be inferred, not merely by generalized asseveration alone." Id., at 72. We find that while Lowell dealt with a claim of racial discrimination, the rationale supporting the dismissal of the complaint for failure to plead sufficient non-conclusory facts to establish a viable claim is equally applicable to a case such as the present one.

In Lowell, the Court noted that the pleading requirement serves three important purposes: "[f]irst, it gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Second, ... rising litigation costs ... speak for requiring some specificity before permitting a claimant to drag a defendant past the pleading threshold. Third ... the burgeoning caseload crisis

---

³As stated previously, Rule 8(a) "requires that a complaint include only 'a short and plain statement of the claim showing that the pleader is entitled to relief." Leatherman, 113 S. Ct. at 1163.

in the district courts weighs in favor of earlier disposition of baseless claims." Id. at 72, n.3 (internal citations omitted).

We find that plaintiffs have clearly complied with the pleading requirements set forth in Rule 8(a). Plaintiffs have stated sufficient facts to establish that they were subjected to a seizure by police officer defendants, acting in concert with Amigo employees. They have certainly brought forth enough information so that defendants have full notice of the factual predicate underlying plaintiffs' claims, and they have established a causal connection between defendants' actions and the harms for which they now seek redress. Under the standards enunciated by the Supreme Court in Leatherman, and subsequently by the First Circuit in Lowell, we find that plaintiffs have succeeded in establishing a claim under Section 1983 so as to withstand a motion to dismiss under Rule 12(b)(6).

**Applicable Law and Analysis – Whether Plaintiffs Lack Standing to Sue on Behalf of the Minors**

Defendants argue that plaintiffs have no standing to sue under § 1983 because family members do not have a cognizable claim under § 1983 unless the conduct complained of is directly aimed at the familial relationship. We agree that some of the plaintiffs in this action do not have standing to bring an action under § 1983 and that, as such, some of those claims must be **dismissed**.

It is well settled law in this Circuit that family members do not have standing to sue under § 1983 in their personal capacity. In Soto v. Flores, 103 F.3d 1056, 1062 (1st Cir. 1997), cert. denied, 118 S. Ct. 71 (1997), the First Circuit stated that "[t]here is no absolute constitutional right to enjoy the companionship of one's family members free from all encroachments by the state... Thus the death of a family member will not ordinarily give those still alive a cognizable due process

**Civil No. 97-2921(SEC)**                                                                                                  10

claim under § 1983..." citations omitted. See also Robles-Vazquez v. Garcia, 110 F.3d 204, 206, n.4 (1st Cir. 1997) ("First Circuit case law holds that surviving family members cannot recover in an action brought under § 1983 for deprivation of rights secured by the federal constitution for their own damages for the victim's death unless the unconstitutional action was aimed at the family relationship.") It is clear from the caselaw that family members do not have standing to sue in their personal capacity under § 1983 for constitutional harms suffered by their relatives. Plaintiffs have not made the argument that defendants' actions were aimed at the family relationship. As such, only those plaintiffs who have alleged a personal harm as a result of the unconstitutional conduct in which defendants allegedly incurred have a cause of action pursuant to § 1983.

Plaintiffs Juan Carlos Arias-Jimenez, his wife, and their conjugal partnership, have a personal cause of action, based on the allegations in the complaint regarding Arias' illegal detention and malicious prosecution by defendants. Arias and his wife appear on their own behalf, and according to the allegations in the complaint, they also appear as parents with *patria potestas* over minor children Carla Beatriz Arias-Gonzalez and Laura Raquel Arias-Gonzalez. We find that the allegations that the parents are suing on behalf of the minors should be construed as a suit by the minors themselves; therefore, since they were personally involved in the incident that gave rise to the instant case, their claims shall not be dismissed.

The claims presented by Angel Vicente Alen-Gutierrez, his wife, and their conjugal partnership as parents with *patria potestas* over minor Veronica Maria Alen-Arias shall be construed in the same manner; the claims shall be construed as being presented by Veronica herself and are not subject to dismissal since she was personally involved in the incident that gave rise to the instant case. The claims presented by Alen, his wife, and their conjugal partnership on their own behalf,

**Civil No. 97-2921(SEC)**   11

however, must be **dismissed with prejudice**. As has been clearly established by First Circuit caselaw, relatives do not have standing to present claims under § 1983 for constitutional violations suffered by a family member. Because there is absolutely no evidence that defendants' actions were aimed at the family relationship, all claims presented by Angel Vicente Alen-Gutierrez, his wife, and their conjugal partnership, on their own behalf, shall be **dismissed with prejudice**.

**Applicable Law and Analysis – Whether Amigo can be sued under 42 U.S.C. § 1983**

Amigo and Merced argue that they cannot be sued under 42 U.S.C. § 1983 because they, as private actors, cannot be acting "under color of state law" as required by the statute. While it is correct that private actors are normally not liable under § 1983, the United States Supreme Court has held that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color of law' for purposes of § 1983 actions." Dennis v. Sparks, 449 U.S. 24, 27 (1980). See also Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). To that end, the Third Circuit has stated that "[s]tate action may be found if the private party has acted with the help of or in concert with state officials." Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998), quoting McKeesport Hosp. V. Accreditation Council for Graduate Med. Educ., 24 F.3d 519, 524 (3d Cir. 1994).

In this case, plaintiffs have made very specific allegations regarding Amigo personnel and their conduct. At all times, plaintiffs have alleged that the illegal search and seizure that was conducted by police officer defendants occurred at the insistence and instigation of Amigo personnel. Plaintiffs specifically allege that they were initially stopped by Amigo personnel; that police officers searched the car and their persons at the request and due to the accusations made by Amigo personnel; and that Amigo personnel originally stated that they had stolen a bottle of wine but maliciously changed their story to stating that plaintiffs had stolen some cans of tuna when the bottle

**Civil No. 97-2921(SEC)**                                                                 12

of wine failed to appear either in the car or on plaintiffs. It is clear that the pleadings allege that Amigo personnel were acting in concert with police officer defendants and that the alleged illegal search and seizure occurred pursuant to their allegations and insistence. For purposes of a motion to dismiss, plaintiffs have averred with sufficient detail that Amigo and Merced were acting "under color of state law" when they accused plaintiffs of theft and instigated the subsequent illegal search and seizure. Therefore, Amigo and Merced's motion to dismiss based on an argument that defendants were not acting "under color of law" for purposes of § 1983 must be **DENIED**.

**Applicable Law and Analysis – Whether claims against police officer Acevedo are barred by the Eleventh Amendment**

Defendant Acevedo avers that plaintiffs' claims against him should be dismissed as barred by the Eleventh Amendment because he "was apparently sued only in his official capacity". **(Docket #12, at page 2).** He goes on to argue at length as to how the Eleventh Amendment bars suits against government officials in their official capacity, as they are considered suits against the state. This discussion of Eleventh Amendment caselaw, however, is inapposite, as plaintiffs' complaint does not specify in which capacity police officer Luis Acevedo was sued, whether in his official or personal capacity.

While there is some disagreement among circuits as to whether a plaintiff must specify that a defendant is being sued in his personal capacity for a suit to proceed under § 1983, this district has found that "[a]s long as the averments in the complaint are sufficient to ascertain fairly the capacity in which the defendant is being sued, jurisdiction may be sustained without an explicit statement of capacity." Pieve-Marin v. Combas-Sancho, 967 F. Supp. 667, 671 (D.P.R. 1997) (internal citations omitted). The Pieve-Marin court agreed with the majority of courts that have addressed this issue,

**Civil No. 97-2921(SEC)** 13

finding that "a complaint is to be construed liberally and in favor of the plaintiff, and that a plaintiff with a viable claim should not be disadvantaged by the attorney's misconceptions." Id. at 669. It went on to state that some courts have found "that the only logical reading of a complaint requesting damages is that the defendants are being sued in their individual capacities, because damages are barred in an official capacity suit." Id. at 669-670.

We agree with the Pieve-Marin court in that a complaint should be construed liberally and in favor of plaintiff. Furthermore, we find that from the allegations in the complaint, it can be fairly ascertained that plaintiffs' claims against defendant Acevedo are against him in his individual capacity. Plaintiffs refer to the actions personally taken by Acevedo at all times, and like the suit in Pieve-Marin, request monetary damages, as would only be available in an individual capacity suit, and do not request injunctive relief, as would be available in an official capacity suit. Under a liberal reading of the complaint, we find that plaintiffs' claims against police officer Acevedo should be construed as being in his individual, rather than his official, capacity, and as such, the present suit is not barred by the Eleventh Amendment. Defendant's motion to dismiss based on the Eleventh Amendment must therefore be **DENIED**.

**Applicable Law and Analysis – Whether we should dismiss plaintiffs' supplemental law claims**

Finally, defendants argue that plaintiffs' supplemental law claims under Puerto Rico law should be dismissed for lack of a foundational federal claim. Indeed, defendants correctly argue that upon dismissal of all federal claims prior to trial, it is within a trial court's sound discretion to dismiss pendent law claims without prejudice to them being presented in state court. See, e.g., Vera-Lozano v. International Broadcasting, 50 F.3d 67 (1st Cir. 1995).

However, it is hornbook law that district courts have discretion to exercise supplemental

| Civil No. 97-2921(SEC) | 14 |
|---|---|

jurisdiction over the state law claims where the state and federal claims derive from a common nucleus of operative facts. See, 28 U.S.C. §1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Since we have not dismissed plaintiffs' claims under Section 1983, we find that dismissal of plaintiffs' supplemental law claims is not warranted.

**Conclusion**

Pursuant to the above discussion, the claims presented by plaintiffs Angel Vicente Alen-Gutierrez, his wife, and their conjugal partnership shall be **DISMISSED WITH PREJUDICE**. Furthermore, pursuant to plaintiffs' agreement, all claims pursuant to 42 U.S.C. § 1985 shall be **DISMISSED WITH PREJUDICE**. In addition, all claims against co-defendant Officer Jimenez shall be **DISMISSED WITH PREJUDICE** pursuant to Rules 4(m) and 41(b) as plaintiffs never served process on said defendant. However, all other arguments presented by defendants, regarding plaintiffs' failure to state a claim under § 1983; plaintiffs' lack of standing to sue under the statute; that claims against defendant Acevedo were barred by the Eleventh Amendment; and that the supplemental law claims should be dismissed for lack of a foundational federal claim, are **DENIED**. Partial judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 1999.

SALVADOR E. CASELLAS
United States District Judge